In the Matter of the Estate of Rose or Rosa Vitelli, Formerly Rosa De Sapio, Deceased.

Surrogate's Court, Kings County, December 29, 1932.

*John Glanton O'Brien*, for the petitioner.

*Jacob Kraus*, for the respondent.

WINGATE, S. The extraordinary naivete of the present application makes it worthy of an especial niche in the hall of legal curiosities of the State of New York.

As was noted in a former opinion relating to the affairs of this decedent (139 Misc. 165), she was a young married woman, in modest circumstances, living apart from her husband, and was mortally wounded by a rejected suitor. While on her death bed she gave certain of the property which she had been able to save to the present respondent, who was the only person who appears to have evinced any particular interest in her fate or welfare. This court upheld the validity of the gift and its determination was unanimously affirmed on appeal (233 App. Div. 867 and 234 id. 620), and leave to appeal to the Court of Appeals was denied (234 id. 698).

In spite of the apparent finality of this determination, the opposing parties have refused to accept defeat in their efforts to secure the property thus vested in the respondent and have made a variety of applications seeking to reopen or reverse the result. The present is the latest of these attempts and it is to be hoped that its decision will carry conviction that when a case has received final disposition at the hands of all courts constitutionally competent to pass upon it, the questions involved are closed.

The present application is made by the undertaker who buried the remains of the deceased, seeking to set aside the gift *causa mortis* on the ground that it was made by the decedent " with intent to hinder, delay and defraud your petitioner and her other creditors, existing and future." No single word of proof or even an unsupported allegation of the petition points to any intention to defraud on the part of the decedent, nor to any person as a creditor of the deceased at the time of the gift or subsequent thereto.

It is one of the most primary principles of property law that an owner thereof is entirely at liberty to dispose of any part or all of his possessions, either gratuitously or otherwise, at a time when he

is not obligated to another and any such transfer is not subject to question from any source. (*Kain* v. *Larkin*, 131 N. Y. 300, 307; *Phillips* v. *Wooster*, 36 id. 412, 414; *Curtis* v. *Fox*, 47 id. 299, 301; *Dunlap* v. *Hawkins*, 59 id. 342, 346, 347, and other authorities too numerous to mention.) As was said by the court in the *Phillips Case* (*supra*, at p. 414): " Subsequent indebtedness cannot be invoked, to make that fraudulent, which was honest and free from impeachment at the time."

The decedent did not contemplate the incurring of any indebtedness nor did she, in fact, so far as the record shows, ever incur any subsequent to the gift to this respondent.

An undertaker who buries the remains of a decedent is not a creditor of the departed. He may or may not be such of the latter's estate, depending on the circumstances of the case. As is pointed out in *Matter of Nicolin* (55 Minn. 130; 56 N. W. 587, 588) and in *Woolverton* v. *Taylor Co.* (43 Ill. App. 424, 426): " In the ordinary and almost universal definition of the word, a ' creditor ' is a person to whom a debt is owing by another person."

A debt can be created only *ex contractu* or *ex delictu*. For the former, there must be direct dealings between the parties either personally or through an agent. Seldom, if ever, does a decedent have contractual dealings with the person who buries him after his death. Certainly none are here demonstrated. A dead person can have no agent. To create a debt *ex delictu*, a tort must be committed against the claimant and this is impossible by the dead.

Aside, however, from the fact that the petitioner, by reason of his failure of inclusion in the class of creditors of the deceased, has no *locus standi* to present this application, there are other and equally cogent reasons why this application is wholly lacking in merit.

The decedent was a married woman, for whose funeral expenses, to a reasonable amount, her husband, even though separated from her, was liable. (*Patterson* v. *Patterson*, 59 N. Y. 574, 583; *Watkins* v. *Brown*, 89 App. Div. 193, 194; *McCue* v. *Garvey* 14 Hun, 562–564; *Freeman* v. *Coit*, 27 id. 447, 450.) While it may be, on certain of the authorities cited, that he would, on payment, be entitled to reimbursement from her separate estate, if she had left any, the primary obligation rests upon him, and where, as in the case at bar, no separate estate existed at the time of the death, there would be no fund from which such reimbursement could be obtained.

Finally, even were it the fact that the decedent had not made these *causa mortis* gifts, so that their subject-matter were still a part of her estate, not more than one-third to one-half of the $1,271 bill of the undertaker could have been allowed therefrom,

since the amount claimed is wholly disproportionate to the station in life and circumstances of the decedent.

As the matter stands, the entire application is fantastic to a degree which would seem to lend color to the thought that a not inconsiderable portion of the litigation which has been instituted against the present respondent in connection with the affairs of this decedent, is vexatious.

The application is denied, with costs. Proceed accordingly.